UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - x
                                     :
UNITED STATES OF AMERICA             :
                                     :
        - v. -                       :
                                     :   SUPERSEDING INDICTMENT
ROGER RALSTON,                       :
CHRISTOPHER WRIGHT,                  :   S2 19 Cr. 774 (JSR)
  a/k/a "Christopher Anthony Wright," :
  and                                :
STEVEN HOOPER,                       :
                                     :
            Defendants.              :
- - - - - - - - - - - - - - - - - - x

## COUNT ONE
### (Wire and Bank Fraud Conspiracy)

The Grand Jury charges:

### The Defendants

1.  At all times relevant to this Superseding
Indictment ("Indictment"), ROGER RALSTON, the defendant, was the
Chief Executive Officer of DirectView Holdings, Inc.
("DirectView"), a Florida-based corporation, and resided in the
United States.

2.  At all times relevant to this Indictment,
CHRISTOPHER WRIGHT, a/k/a "Christopher Anthony Wright," the
defendant, was a citizen and resident of the United Kingdom.

3.  At all times relevant to this Indictment, STEVEN
HOOPER, the defendant, was a citizen of the United Kingdom, and
resided in the United Kingdom and Mexico.

## The Investment Fraud Scheme

4.    From at least in or about 2009, up to and including
in or about 2015, ROGER RALSTON, CHRISTOPHER WRIGHT, a/k/a
"Christopher Anthony Wright," and STEVEN HOOPER, the defendants,
and others known and unknown, engaged in a scheme to defraud
victims in the United Kingdom through the sale of false,
fraudulent, and materially misleading investments, and to launder
the proceeds through bank accounts in the United States and foreign
countries (the "Investment Fraud Scheme").

5.    As part of the Investment Fraud Scheme, ROGER
RALSTON, CHRISTOPHER WRIGHT, a/k/a "Christopher Anthony Wright,"
and STEVEN HOOPER, the defendants, and others known and unknown,
used the services of telemarketing call centers to identify and
cold-call potential victims. The victims were primarily
individuals residing in the United Kingdom, many of whom were
elderly or retired, including many victims over the age of 55.
Over a series of telephone calls, the telemarketers persuaded the
victims to invest money under various false and misleading
pretenses, including but not limited to misrepresentations about
the value or price of the investments and the fraudulent promises
of short-term, high-yield, no-risk returns, when in fact the
investments were high-risk, illiquid, and/or entirely fictitious.
Many victims were persuaded to make additional investments on the
false pretense that they would not be permitted to sell their

2

holdings until they purchased more. The telemarketers also fraudulently concealed from victims that a substantial portion of their investments would be used to pay purported commissions to members of the scheme. In reliance on the false representations and promises, the victims wired funds to various bank accounts in the United States, including in the Southern District of New York, in the names of entities controlled by RALSTON. RALSTON, with assistance from WRIGHT, HOOPER, and others known and unknown, caused documents related to the fraudulent investments, including purchase contracts and investment certificates, to be sent to the victims by mail, including Federal Express, and by email. Victims who tried to sell their investments found that they were unable to do so. The victims never received a refund of their principal or any return on their investments.

6. In order to conceal the nature, location, source, ownership, and control of the proceeds of the Investment Fraud Scheme, CHRISTOPHER WRIGHT, a/k/a "Christopher Anthony Wright," and STEVEN HOOPER, the defendants, and others known and unknown, set up overseas bank accounts, including accounts in Cyprus, Switzerland, and the United Kingdom, in the names of various shell companies (the "Foreign Bank Accounts"). ROGER RALSTON, the defendant, regularly transferred a substantial portion of the fraud proceeds from bank accounts in the United States, including in the Southern District of New York, to the Foreign Bank Accounts.

7.   During the course of the Investment Fraud Scheme, the means and methods of the Investment Fraud Scheme remained materially the same, while the nature of the particular fraudulent investment vehicle being marketed to the victims changed over time.

**The Stock Fraud**

8.   As part of the Investment Fraud Scheme, from in or about 2009, up to and including in or about January 2011, ROGER RALSTON and CHRISTOPHER WRIGHT, a/k/a "Christopher Anthony Wright," the defendants, and others known and unknown, engaged in the sale of restricted shares of DirectView (the "Stock Fraud"). Beginning in or about March 2010, DirectView shares were publicly traded on over-the-counter markets. Over-the-counter stocks, also frequently referred to as "penny stocks," are typically issued by smaller companies that cannot meet the listing requirements of formal stock exchanges, such as the New York Stock Exchange. During the Stock Fraud, victims in the United Kingdom were persuaded by telemarketers to purchase shares in DirectView based on false representations and promises, including that the shares were a no-risk, short-term investment in a debt-free company, and that the shares were likely to increase over 100 percent in value in a short period of time. The telemarketers also minimized or did not mention the fact that the shares were "restricted," meaning that there were rules and exemptions that had to be met before the shares could be resold. In contrast, DirectView's annual report filed

4

with the United States Securities and Exchange Commission ("SEC") for the year ending December 31, 2010, contained dire warnings about the poor fiscal health of DirectView and the risk attendant in purchasing its stock, including that the company "may be forced to cease operations" due to losses and cash flow problems, and purchasers "may find it extremely difficult or impossible to resell our shares." The telemarketers fraudulently sold the DirectView shares at significantly inflated prices to the victims, and fraudulently concealed from the victims that a substantial portion of their investments would be used to pay purported commissions to members of the scheme.

9.    The fraud proceeds from the Stock Fraud were wired to bank accounts in the United States controlled by ROGER RALSTON, the defendant. RALSTON and CHRISTOPHER WRIGHT, a/k/a "Christopher Anthony Wright," the defendant, communicated over email to coordinate the movement of victim funds and the mailing and emailing of documents related to the Stock Fraud to the victims. After receiving the fraud proceeds, RALSTON wired a substantial portion of the proceeds to the Foreign Bank Accounts for the purpose of relocating those fraud proceeds to foreign jurisdictions.

## The Carbon Credit Fraud

10.    As part of the Investment Fraud Scheme, from in or about 2011 through in or about 2015, ROGER RALSTON, CHRISTOPHER

5

WRIGHT, a/k/a "Christopher Anthony Wright," and STEVEN HOOPER, the defendants, and others known and unknown, engaged in the sale of fraudulent "carbon credits" (the "Carbon Credit Fraud"). "Carbon credits," which are issued as part of governmental and voluntary regulatory regimes, are permits representing the right to emit a certain number of tons of carbon dioxide into the atmosphere. "Carbon offsets," which are tied to particular carbon-reducing projects, represent a reduction in carbon dioxide emissions, and can be purchased by individuals and companies to "offset" their or third parties' "carbon-footprints." During the Carbon Credit Fraud, telemarketers cold-called potential victims, who primarily resided in the United Kingdom, and persuaded them through fraudulent pretenses to purchase environmentally friendly "carbon credits" or "offsets." The victims were falsely promised that the carbon-related investments they purchased could be easily sold, carried no risk, and would yield a significant, short-term return. In fact, the carbon credits and offsets that were sold to the victims were fake, and did not represent any actual carbon credits or offsets. The telemarketers also fraudulently sold the carbon credits and offsets at significantly inflated prices to the victims, and fraudulently concealed from the victims that a substantial portion of their investments would be used to pay purported commissions to members of the scheme.

11. The fraud proceeds from the Carbon Credit Fraud were wired to bank accounts in the United States, including in the Southern District of New York, controlled by ROGER RALSTON, the defendant. As part of the Carbon Credit Fraud, RALSTON, CHRISTOPHER WRIGHT, a/k/a "Christopher Anthony Wright," and STEVEN HOOPER, the defendants, agreed to make material misrepresentations to United States banks about the nature of the business and the source of the funds in the bank accounts in order to open accounts and to obtain the funds in the accounts. RALSTON, WRIGHT, and HOOPER communicated over email to coordinate the movement of victim funds and the mailing and emailing of documents related to the Carbon Credit Fraud to the victims, including "emissions reduction purchase agreements," and fake carbon credit certificates with fictitious serial numbers. After receiving the fraud proceeds, RALSTON wired a substantial portion of the proceeds to the Foreign Bank Accounts, including on the following occasions:

a. On or about July 1, 2014, RALSTON wired approximately $97,250 in fraud proceeds from a United States bank account in the name of CEX, LLC to an account in the name of Kinkara Corporation at the Bank of Cyprus.

b. On or about August 8, 2014, RALSTON wired approximately $83,000 in fraud proceeds from a United States bank account in the name of Carrington Group, LLC to an account in the name of Kinkara Corporation at the Bank of Cyprus; and

7

c.   On or about November 27, 2014, RALSTON wired approximately $73,000 in fraud proceeds from a bank account in the name of Empire Global Group International, Corp. in Saint Lucia to an account in the name of Kinkara Corporation at the Bank of Cyprus.

### The CO2 Commodities Account

12.   One of the bank accounts that CHRISTOPHER WRIGHT, a/k/a "Christopher Anthony Wright," and STEVEN HOOPER, the defendants, used to receive proceeds of the Investment Fraud Scheme was a bank account in the name of CO2 Commodities, Ltd. (the "CO2 Commodities Account") at a bank in the United Kingdom ("Bank-1"). WRIGHT and HOOPER were the directors and shareholders for CO2 Commodities, Ltd. ("CO2 Commodities"), and were the signatories on the CO2 Commodities Account. From in or about April 2012 until in or about December 2013, ROGER RALSTON, the defendant, made regular transfers of Investment Fraud Scheme proceeds from bank accounts in the names of RALSTON's shell companies in the United States to the CO2 Commodities Account. WRIGHT and HOOPER, in turn, made regular transfers of Investment Fraud Scheme proceeds from the CO2 Commodities Account to their personal bank accounts at Bank-1.

13.   On or about December 20, 2013, Bank-1 froze the CO2 Commodities Account, as well as the personal bank accounts controlled by CHRISTOPHER WRIGHT, a/k/a "Christopher Anthony Wright," and STEVEN HOOPER, the defendants, at Bank-1. As a result

of the freeze, WRIGHT and HOOPER could not access any of the funds in the C02 Commodities Account or their personal bank accounts, and could not receive funds into the C02 Commodities Account.

14. On or about June 5, 2014, CHRISTOPHER WRIGHT, a/k/a "Christopher Anthony Wright," and STEVEN HOOPER, the defendants, engaged a liquidator (the "Liquidator") on behalf of C02 Commodities to access and liquidate the assets of C02 Commodities, including by un-freezing the C02 Commodities Account, which contained proceeds of the Investment Fraud Scheme. From on or about June 5, 2014, through in or about August 2014, the Liquidator worked on behalf of WRIGHT and HOOPER to un-freeze and access the Investment Fraud Scheme proceeds in the C02 Commodities Account, as well as in WRIGHT's and HOOPER's personal accounts at Bank-1.

15. Before it would release the funds in the C02 Commodities Account, Bank-1 requested certain information related to C02 Commodities, including a description of the nature of the business; invoices evidencing services provided in connection with incoming wires from two shell companies operated by ROGER RALSTON, the defendant; and other follow-up questions regarding how the business operated and whether CHRISTOPHER WRIGHT, a/k/a "Christopher Anthony Wright," and STEVEN HOOPER, the defendants, were aware of any complaints from purchasers of carbon credits. In or about July 2014, HOOPER emailed responses to Bank-1's inquiries to the Liquidator for provision to Bank-1. The responses that

HOOPER provided to the Liquidator about C02 Commodities were false and misleading. The Liquidator then provided those responses to Bank-1 in an effort to un-freeze the C02 Commodities Account.

16.   Based at least in part on the misrepresentations that STEVEN HOOPER, the defendant, supplied to Bank-1 through the Liquidator, Bank-1 released the Investment Fraud Scheme proceeds in the CO2 Commodities Account and the personal accounts of HOOPER and CHRISTOPHER WRIGHT, a/k/a "Christopher Anthony Wright," the defendant, on or about August 12, 2014. The Liquidator thereafter used the fraud proceeds from the C02 Commodities Account to pay taxes and debts relating to CO2 Commodities. After the freeze was lifted, WRIGHT and HOOPER transferred Investment Fraud Scheme proceeds out of their personal accounts at Bank-1. For example, on the same day that the freeze was lifted, WRIGHT transferred approximately 25,000 pounds out of his personal account at Bank-1 to a bank account in his wife's name, and HOOPER transferred approximately 30,000 pounds to other bank accounts under his control.

## STATUTORY ALLEGATIONS

17.   From at least in or about 2009, up to and including at least in or about 2015, in the Southern District of New York and elsewhere, ROGER RALSTON, CHRISTOPHER WRIGHT, a/k/a "Christopher Anthony Wright," and STEVEN HOOPER, the defendants, and others known and unknown, willfully and knowingly combined,

10

conspired, confederated, and agreed together and with each other to commit wire fraud, in violation of Title 18, United States Code, Sections 1343 and 2326, and bank fraud, in violation of Title 18, United States Code, Sections 1344 and 2326.

18.   It was a part and an object of the conspiracy that ROGER RALSTON, CHRISTOPHER WRIGHT, a/k/a "Christopher Anthony Wright," and STEVEN HOOPER, the defendants, and others known and unknown, in connection with the conduct of telemarketing that victimized ten and more persons over the age of 55 and targeted persons over the age of 55, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Sections 1343 and 2326, to wit, RALSTON, WRIGHT, and HOOPER engaged in the Investment Fraud Scheme, and transmitted and caused others to transmit by means of international and interstate wire, documents related to the Investment Fraud Scheme, including purchase contracts and investment certificates, in order to execute the Investment Fraud Scheme and obtain the proceeds therefrom, which proceeds were sent to the defendants by interstate

11

and international wire.

19.  It was further a part and an object of the conspiracy that ROGER RALSTON, CHRISTOPHER WRIGHT, a/k/a "Christopher Anthony Wright," and STEVEN HOOPER, the defendants, and others known and unknown, in connection with the conduct of telemarketing that victimized ten and more persons over the age of 55 and targeted persons over the age of 55, would and did willfully and knowingly execute and attempt to execute a scheme to obtain money, funds, credits, assets, securities, and other property owned by, and under the custody and control of, financial institutions, to wit, banks in the United States the deposits of which were then insured by the Federal Deposit Insurance Corporation, by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Sections 1344(2) and 2326, to wit, RALSTON, WRIGHT, and HOOPER, in order to receive and transfer proceeds of the Investment Fraud Scheme, agreed to make misrepresentations to banks in the United States regarding the nature of the business and the source of the funds in the bank accounts in order to persuade banks to open accounts in the names of various shell companies, and to induce banks to release proceeds of the Investment Fraud Scheme when those accounts were frozen or otherwise restrained.

(Title 18, United States Code, Sections 1349, 2326(1), &

2326(2).)

## COUNT TWO
**(Wire Fraud)**

The Grand Jury further charges:

20.   The allegations set forth in paragraphs 1 through 16 of this Indictment are repeated, realleged, and incorporated by reference as though fully set forth herein.

21.   From at least in or about 2009, up to and including at least in or about 2015, in the Southern District of New York and elsewhere, ROGER RALSTON, CHRISTOPHER WRIGHT, a/k/a "Christopher Anthony Wright," and STEVEN HOOPER, the defendants, in connection with the conduct of telemarketing that victimized ten and more persons over the age of 55 and targeted persons over the age of 55, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, RALSTON, WRIGHT, and HOOPER engaged in the Investment Fraud Scheme, and transmitted and caused others to transmit by means of international and interstate wire, documents related to the Investment Fraud Scheme, including purchase

13

contracts and investment certificates, in order to execute the Investment Fraud Scheme and obtain the proceeds therefrom, which proceeds were sent to the defendants by interstate and international wire.

(Title 18, United States Code, Sections 1343, 2, 2326(1), & 2326(2).)

## COUNT THREE
### (Money Laundering Conspiracy)

The Grand Jury further charges:

22. The allegations set forth in paragraphs 1 through 16 of this Indictment are repeated, realleged, and incorporated by reference as though fully set forth herein.

23. From at least in or about 2009 up to and including at least in or about 2015, in the Southern District of New York and elsewhere, ROGER RALSTON, CHRISTOPHER WRIGHT, a/k/a "Christopher Anthony Wright," and STEVEN HOOPER, the defendants, and others known and unknown, knowingly combined, conspired, confederated, and agreed together and with each other to commit money laundering, in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i), 1956(a)(2)(B)(i), and 1957(a).

24. It was a part and an object of the conspiracy that ROGER RALSTON, CHRISTOPHER WRIGHT, a/k/a "Christopher Anthony Wright," and STEVEN HOOPER, the defendants, and others known and unknown, knowing that the property involved in financial transactions represented the proceeds of some form of unlawful

14

activity, would and did conduct and attempt to conduct such financial transactions which in fact involved the proceeds of specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7), to wit, the proceeds of the wire fraud offense charged in Count Two of this Indictment, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

25. It was further a part and an object of the conspiracy that ROGER RALSTON, CHRISTOPHER WRIGHT, a/k/a "Christopher Anthony Wright," and STEVEN HOOPER, the defendants, and others known and unknown, would and did transport, transmit, and transfer, and attempt to transport, transmit, and transfer, a monetary instrument and funds from a place in the United States to and through a place outside the United States, and to a place in the United States from and through a place outside the United States, knowing that the monetary instrument and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, to wit, the wire fraud offense charged in Count

Two of this Indictment, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

26. It was further a part and an object of the conspiracy that ROGER RALSTON, CHRISTOPHER WRIGHT, a/k/a "Christopher Anthony Wright," and STEVEN HOOPER, the defendants, and others known and unknown, knowingly would and did engage and attempt to engage in monetary transactions in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, to wit, the wire fraud offense charged in Count Two of this Indictment, in violation of Title 18, United States Code, Section 1957(a).

(Title 18, United States Code, Section 1956(h).)

## COUNT FOUR
### (Money Laundering)

The Grand Jury further charges:

27. The allegations set forth in paragraphs 1 through 16 of this Indictment are repeated, realleged, and incorporated by reference as though fully set forth herein.

28. Between in or about July 2014 and in or about December 2014, in the Southern District of New York and elsewhere, ROGER RALSTON, the defendant, knowingly engaged and attempted to engage in a monetary transaction in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, to wit, RALSTON sent more than $10,000 in

16

proceeds derived from the wire fraud offense charged in Count Two of this Indictment from bank accounts in the United States and elsewhere to an account in the name of Kinkara Corporation at the Bank of Cyprus through an intermediary bank in New York, New York, and aided and abetted the same.

(Title 18, United States Code, Sections 1957 & 2.)

### COUNT FIVE
**(Money Laundering)**

The Grand Jury further charges:

29.   The allegations set forth in paragraphs 1 through 16 of this Indictment are repeated, realleged, and incorporated by reference as though fully set forth herein.

30.   On or about November 26, 2014, in the Southern District of New York and elsewhere, CHRISTOPHER WRIGHT, a/k/a "Christopher Anthony Wright," the defendant, knowingly engaged and attempted to engage in a monetary transaction in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, to wit, WRIGHT sent approximately $10,450 in proceeds derived from the wire fraud offense charged in Count Two of this Indictment from a bank account in the name of Corduff Ltd. at the Bank of Cyprus to "Best Crafts Gifts Co." at a bank account in Hong Kong through an intermediary bank in New York, New York, and aided and abetted the same.

(Title 18, United States Code, Sections 1957 & 2.)

17

## **FORFEITURE ALLEGATIONS**

31.   As a result of committing the offenses alleged in Counts One and Two of this Indictment, ROGER RALSTON, CHRISTOPHER WRIGHT, a/k/a "Christopher Anthony Wright," and STEVEN HOOPER, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(8), any and all real or personal property used or intended to be used to commit, to facilitate, or to promote the commission of said offenses; and any and all real or personal property constituting, derived from, or traceable to the gross proceeds that the defendants obtained directly or indirectly as a result of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

32.   As a result of committing the offenses alleged in Counts Three through Five of this Indictment, ROGER RALSTON, CHRISTOPHER WRIGHT, a/k/a "Christopher Anthony Wright," and STEVEN HOOPER, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in said offenses, or any property traceable to such property, including but not limited

18

to a sum of money in United States currency representing the amount of property involved in said offenses.

### Substitute Assets Provision

33.   If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

> a.   cannot be located upon the exercise of due diligence;
>
> b.   has been transferred or sold to, or deposited with, a third person;
>
> c.   has been placed beyond the jurisdiction of the Court;
>
> d.   has been substantially diminished in value; or
>
> e.   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

> (Title 18, United States Code, Sections 981 and 982; Title 21, United States Code, Section 853; and Title 28, United States Code, Section 2461.)

FOREPERSON

DAMIAN WILLIAMS
United States Attorney

19

Form No. USA-33s-274 (Ed. 9-25-58)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

ROGER RALSTON,
CHRISTOPHER WRIGHT,
a/k/a "Christopher Anthony Wright," and
STEVEN HOOPER,

Defendants.

## SUPERSEDING INDICTMENT

(18 U.S.C. §§ 1343, 1349, 1956(h),
1957, 2326, & 2.)

DAMIAN WILLIAMS
United States Attorney

Foreperson

1/5/22                  Filed Superseding Indictment

USIT Lib. hugo.

/ik